UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEN STEVEN,

Petitioner,

v.

OTAY MESA DETENTION CENTER,

Respondent.

Case No.: 26-cv-916-JES-DDL

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 1]**

Before the Court is *pro se* Petitioner Ben Steven's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), filed on February 12, 2026. ECF No. 1 ("Pet."). Respondents filed a return on February 23, 2026. ECF No. 7 ("Return"). For the reasons set forth below, the Court **GRANTS** the Petition.

## I.       BACKGROUND

Petitioner is a citizen of Brazil who entered the United States on May 16, 2024. Return at 2; Pet. at 6. Petitioner states, and Respondents do not meaningfully contest, that Petitioner was previously processed and granted parole. Pet. at 2. Petitioner has complied with all of the terms of his parole. Pet. at 6.

1

On July 26, 2025, Petitioner was re-detained by officers who initiated contact after noticing that he was Black and doing yard work in an area with a high incidence of prior immigration-related arrests. ECF No. 7-1 at 4. The officers were conducting surveillance for an unrelated subject when they "observed two adult Black males performing yard work […] and requested close-up photographs." *Id.* The officers used the photographs for database queries, and determined that one of the individuals, who was not Petitioner, was a person of interest with a removal order. *Id.* The officers thus "directed the entire team to stage and close in on the vicinity [..] to conduct an administrative arrest/ detention." *Id.* The arrest report notes that the area in question "is documented in DHS and other law-enforcement databases as having a high incidence of prior immigration-related arrests," but states that that information "was not the sole basis for the contact." *Id.*

Officers then made contact with Petitioner, who "became irate, refused to answer questions, and attempted to push through agents." *Id.* at 5. The officers "guided [Petitioner] to the ground to gain control" and put him in two pairs of handcuffs. *Id.* The officers then detained Petitioner "[f]or officer safety and to verify identity under administrative immigration authority." *Id.* Petitioner has since remained in detention ever since, which is a period of seven months at the time of this order.

Petitioner's removal proceedings are ongoing, and his next master hearing is scheduled for March 5, 2026. Return at 2.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in

that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.   DISCUSSION

In his petition, Petitioner argues that his re-detention and the manner in which it was carried out was impermissible considering his prior release on parole. Pet. at 6. The Court construes Petitioner's *pro se* Petition as raising Fifth Amendment Due Process claims, and agrees that Respondents violated due process protections by re-detaining Petitioner without providing notice and opportunity to be heard.

### A. Jurisdiction

As an initial matter, Respondents argue that the Court does not have jurisdiction over areas of immigration law, like the decision to initiate removal proceedings against an alien, designated by law to the executive branch. ECF No. 7 at 2. As discussed in other cases before this Court and in this District, the Court agrees with the government's underlying proposition but finds that it has jurisdiction to hear Petitioner's claims that his detention is unlawful. *See Sanchez v. Noem*, 25-cv-2995-JES-BJW, ECF No. 11 (S.D. Cal. Sept. 26, 2025); *Alegria Palma v. LaRose*, 25-cv-1942-BJC-MMP, ECF No. 14 (S.D. Cal. Aug. 11, 2025); *Mendez Los Santos v. LaRose*, 25-cv-2216-TWR-MSB, ECF No. 14 (S.D. Cal. Sept. 4, 2025) (granting petition by minute order); *Rokhifirooz v. LaRose et al.*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal Sept. 15, 2025).

### B. Due Process

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—

26-cv-916-JES-DDL

lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.*

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then

released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi*, 792 F. Supp. 3d at 1034-35.

Here, Petitioner was granted release on some form of parole after he entered and was processed in this country, creating a liberty interest protected by the Due Process clause. *See* Pet. at 6. As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard, but also that the notice and opportunity be meaningful. No. 25-CV-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Here, Petitioner alleges that he had totally complied with the terms of his parole, and the record does not reflect that he was afforded any process in the revocation of that parole. Pet. at 6; *see generally* Return. In their briefing, Respondents argue that the May 17, 2024, Notice to Appear ("NTA") issued to Petitioner constituted adequate notice to revoke his parole. Return at 4-5. However, the cited NTA was issued the day after Petitioner's arrival, and could not have properly revoked Petitioner's parole because it states that Petitioner was not yet issued parole. ECF No. 7-1 at 9. Further, Petitioner was released on parole after the NTA was processed. *Id.* at 4. In light of those factors, Petitioner's parole was not terminated and did not expire. The May 17, 2024, NTA clearly cannot constitute adequate notice satisfying due process to revoke Petitioner's parole on July 26, 2025, despite Respndent's misguided attempts to suggest otherwise. Additionally, Respondent does not suggest there was any opportunity to be heard regarding the revocation of Petitioner's parole. *See generally* Return.

The facts of Petitioner's re-detention also reflect a lack of regard for the procedural protections afforded to liberty interests by the due process clause. On the record before the

5

26-cv-916-JES-DDL

Court, there were no changed circumstances justifying revocation of Petitioner's parole or his re-detention, and therefore any notice and opportunity to be heard that did occur could not have been meaningful. *See Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) ("An alien's opportunity to be heard regarding a change in his status is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's supervised release 'at any time' on a discretionary, but not unlimited, basis."). Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained him on July 26, 2025.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Because the Court grants the petition on the Due Process ground and concludes that Respondents' revocation of Petitioner's parole violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting parole or other release that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **February 26, 2026**, confirming that Petitioner has been released. The Court **DENIES AS MOOT** the remainder of Petitioner's claims. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: February 24, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

26-cv-916-JES-DDL